Okay, our last case for argument today is Klimashevsky v. DEA, appeal number 23-1543. Mr. Schoenfeld, whenever you're ready. May it please the honor to report Richard Schoenfeld appearing on behalf of the appellant Alexander Klimashevsky. The issue raised in this appeal is whether the DEA sending notice of seizure and forfeiture of $585,610 via certified mail with no return receipt being sent back to the DEA, no tracking information being provided by USPS, and the appellant receiving the notice after the time for a claim to be submitted complies with due process. So if I have a question for you, it's this. The government says that it wasn't until fairly late in in the process that Mr. Klimashevsky raises these these problems about timeliness. He just, and I looked at the claim, and it seems to be correct, you know, he he just files this untimely administrative claim without saying my letter, I didn't get my personal notice letter until after the statutory claims deadlines applied and you know, he doesn't really raise this. The government claims that Mr. Klimashevsky raises for the first time in his October 20, 2021 motion that his personal notice of seizure was received, you know, July 28. That's what gave rise to the rest of the time frames that he talks about. So I'm just wondering, did he waive the right to make this kind of complaint? So under Garcia Meza, we take a look at the totality of the circumstances, and it's a due process right? So it is the due process obligation of the DEA to make sure that proper notice is sent. Well, but let's let's just put an asterisk there. They certainly do have that kind of due process obligation, but when all is said and done, they don't have, you know, a hard and fast responsibility to succeed. They, as long as they've satisfied the Moline standards, they've used the right kind of notice, reasonably calculated to reach a person, etc, etc, they've done what due process requires of them. So where, in your view, did they fall short? By not looking at the USPS tracking. And what happened is when we submitted the claim on August 17th, received by the DEA on August 18th, if we look at short appendix number 17, it's the declaration of the DEA representative. They looked at the USPS tracking on August 26th, after having received the claim. They looked at the USPS tracking again on August 30th, after having received the claim. The USPS tracking shows that it was in transit. When we look at the cases such as Garcia Meza, Small v. US, US v. Rogers, Torres, all of those cases say that if it's undelivered, you have to do more, and they interchange undelivered and returned. So at the point that the DEA received the claim, the USPS tracking showed that it was undelivered. And they looked twice, and then interestingly, before they actually did the undelivered claim, which was after having received Klimaszewski's claim, they looked again on September 30th, 2021, the very day that they administratively forfeited the property, and state in their declaration, it still said in transit to next facility. Right, so it's messed up, and what the district court has a couple of reasons for, you know, ruling against you, and one of them, one of them also troubles me, that the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim. So Mr. Klimaszewski certainly knows about the seizures, more than half a million dollars, you know, people notice. So he knows that there's been a seizure. Why doesn't he fail under that capital B part of the statute? So if we look at the Loebsen case, which the district court heavily relied upon, as does the DEA in this appeal, a couple of things stand out. One is that in that case, when the individual received the receipt for the forfeiture, it had a DEA case number on it. Ours did not. It had the information for purposes of contacting DEA counsel. Ours did not. And it had an advisement that should you have any questions related to this forfeiture, you should contact DEA counsel. So you're saying, I think, I don't want to put words in your mouth, but he knows that there's been a seizure. He was there. He also, though, I think you're arguing, had a reasonable expectation that he would get further instructions from DEA about what to do about it if he wanted to either challenge it or actually sometimes you won't just file a claim for remission or whatever, a couple things you can do in these seizure situations. And that's what doesn't happen. Yes. And that actually was in the DEA's declaration as well, that the DEA agents that seized the forfeiture, the currency, said you will receive notice of the forfeiture in the mail. And taking it one step further, going back to the Loebsen case to distinguish it, in that case, the DEA agent contacted Loebsen twice to attempt to tell Loebsen that you were going to receive this notice in the mail. So when we go back to the sort of burden shifting that they're putting on Mr. Klimaszewski, well, you submitted this claim when in reality it was timely based on this July 26th to the 28th receipt of the actual notice. You didn't tell us that the notice was received late. In the Loebsen case, the person actually signed the return receipt for the mailing, so it was received at some point in time. The DEA had reached out twice to inform Loebsen that this forfeiture was coming. Why didn't the DEA reach out and say, well, hang on a second, we received this claim late, July 26th to 28th, in theory late, based on when the notice was sent. We have absolutely no information on when it was received because we looked on August 26th and August 30th after having received your claim, and it says to transit next facility. The DEA is the one that has the due process obligation. Why didn't the DEA reach out and say, wait a second, we received this claim, but the notice was sent three months ago. We have no proof as to when it was received. Let's talk about why it's coming in now. So it's their due process obligation. It really is a burden shift on the part of both the district court and the respondent in their argument here that my client was supposed to do something more when the undisputed evidence for purposes of summary judgment is that he didn't receive this notice until July 26th to July 28th. And again, summary judgment standard, all reasonable inferences have to be drawn in favor of my client, the appellant here. So when we look at Garcia Meza, which is inconsistent with the position taken by the respondent in this case, there is no, the court expressly stated that we are not going to draw a bright line rule that as long as at the time you sent the notice, it was adequate. Instead, we're going to look at the totality of the circumstances. And in that case, they had a return receipt five days later saying it was undeliverable or rejected. And the court said they have to do more. In this instance, it is no different. They went to the USPS website before rejecting this claim and saw in transit to next facility. They went back to the website four days later. Your time is running low, so I just wanted to ask you something. So your client is told by DEA that he'll get a notice. No notice. He doesn't get a notice. He's waiting. He doesn't get notice. Why didn't he just go on the DEA website then to say, to realize, oh, you know, maybe the notice kind of got lost in the mail. Maybe it's not coming. Let me just figure out what's happening with my claim. You know, and if he just goes on the DEA website, my understanding is that he would find his claim, he would find the proceedings there and he would figure out what to do. Two reasons. It's not so easy. If you look at the short appendix where you see how they actually list the publication, it's like small print. There's a ton of publications. You'd have to dig through it. But more significantly, he was never advised. Keep an eye out on the DEA website for forfeiture purposes. To the contrary, he was told he will receive notice by mail. He received that between July 26 and 28. And based on that date, timely submitted his claim. And one last thing I will note is that all of the cases, Garcia Meza, small versus U.S. U.S. B. Rogers, Torres and Moline, which they all relied upon to reach that point, have said that when the government knows of the actual person the money was seized from, they have to do more than just publication notice. And I'll reserve the remainder. Thank you, Mr. OK, Mr. Hannah. Thank you. May it please the court. My name is Adam Hannah. I represent the Drug Enforcement Administration in this case. Mr. Hannah, let me ask you a question right off the bat. It seems as though the gist of the government's argument or the DEA's argument is as long as we make some general effort to give notice, that's enough. And there's no due process right to actual notice and so on and so forth. So I find that to be in conflict with what the Supreme Court's the case that neither party cited. So maybe if people want to discuss it in a letter, that's fine. But it's a Supreme Court decision called Jones against Flowers decided April 26, 2006, in an opinion by the chief justice, Chief Justice Roberts, 547 U.S. 220. So that case deals with notice of a tax sale that a state wants to conduct where the notice never reaches the guy. And there are all sorts of circumstances in this case that make you think maybe he should have received it, but he didn't. But instead, what the court not only does, first of all, it goes back to Mullane and repeats that we stated when notice is a person's due, the means employed must be such as one desirous of actually informing the absentee might reasonably adopt. But it says when the effort to give notice comes back as undelivered, somebody needs to try harder. And that's the part that I think is interesting here. He says, we do not think that a person who actually desire to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed. And he goes on and talks about all of that. And then the court says, well, are there other things that could have happened here? The majority says yes. And that's the principle that worries me here, because it's not quite the same circumstance. You never got an undelivered thing. But it turned out to be very easy for the DEA to check to see if this was ever received. And it never was. I mean, the right documentation never came through. And it seems to me under those circumstances that what we are looking at is this 983E. If you're a person entitled to written notice and you didn't receive that, you're entitled to set aside the declaration of forfeiture. And the DEA is in this work to rule frame of mind. And I honestly think Mr. Klimashevsky has a pretty good showing that they just didn't try hard enough. And that's what Jones against Flowers is about. Thank you, Judge Wood. In this case, though, the DEA selected a method that was reasonably calculated to reach Mr. Klimashevsky. But it didn't, though. They didn't. They never checked. They never, especially when they get the claim from him. Maybe they shouldn't need to check out of the blue. But they do get a claim from him. And instead of going back, and then they do check. And they find out that the notice was never delivered. But instead, they say, oh, this is an untimely claim. Now, there's some conflict there. Your Honor, in this case, this is a notice that was sent by a method reasonably calculated to reach him. And it actually did reach him. When the claim came in, they had every reason to check their records and see if the notice they sent reached him by a reasonable date. And it didn't. Now, he says July 26, 28. But he's filing within the permitted period of time, isn't he, for that? He's not, Your Honor. The 30 days that the appellant claims he has after receiving a notice to file a claim, it's simply not based in statute. It's not in Section 983. He has 35 days after the personal notice letter was sent. And in this case, the notice letter was sent. And DEA knew that it was received. No, it was received, Your Honor. It was received by Mr. Clements. Not within the time period that the DEA notice said you had to file after receipt. But what we don't know is if attempts to make that delivery were made or not. And what we know from the tracking is that the tracking is inaccurate at the outset because it doesn't reflect this undisputed fact, which is that Mr. Klimaszewski ultimately plucked it out of his mailbox sometime between July 26 and 28. This is a method that was picked to get to him. It did, in fact, get to him. So what do you do? I mean, honestly, I don't want to overly personalize this, but the Postal Service is sometimes not as prompt as we would wish. And so if you actually had proof that the DEA mails it May 15 and it shows up in his mailbox July 28, we would all agree that's an inordinately lengthy time period. But what if that is what happened? Well, the tracking shows that it made it as far as California within about a week from when it departed Virginia. And the tracking was never updated after that. We don't know how many attempts were made. But I'm just asking, you're not answering my question. What if you actually had a factual record showing that the DEA mails it May 15 and the factual record shows, contrary to this record, the tracking record showed that it's finally delivered to him on July 28? What would you do in that case? I think that's a different situation because the DEA would know that it was not delivered to him within that time frame. They wouldn't know in between. They would never get any response between May 15 and July 28. They'd only find out after July 28 that that's when it was finally delivered. In this case, again— And so your view is just tough luck, you know, the mail is slow and it's on you to speed it up? There is a certain responsibility when somebody has nearly $600,000 in vacuum sealed U.S. currency seized from them to take some action to preserve their rights. And in this case, nothing was done. And the DEA, when it— Well, he does something immediately when he gets the notice. It's just that the DEA thinks it's too late. Well, and it is, in fact, too late under Section 983. And they knew when they forfeited it that he had received the notice because that was referenced in his attorney's late claim. So under what circumstances do you think this first paragraph of 983E applies? That any person entitled to written notice in any non-judicial civil forfeiture proceeding who does not receive such notice may file a motion to set aside a declaration of forfeiture. And then the two criteria— So do you think that's the null set? You can file a motion, but we'll always deny it? So the statute requires—or really only offers relief in a very narrow set of circumstances where the agency knows of a person's interest in the property, and then they don't get a notice. In this case, he did receive a notice, and that was confirmed— But not a timely notice. I mean, that's what we're having this unproductive exchange about. The notice was mailed timely, and that was— But it wasn't received timely. That's not an exceptional circumstance that justifies sort of delving in— Your Honor, 168 days lapsed before he did anything to contact the DEA and ask about what had happened to his currency. When you look at this Court's cases, you know— That's capital B. The moving party did not know. I was on A, that the government— Did the government do enough to take reasonable steps to provide him with notice? The government did, because it sent notice to his actual address where it knew that he could be found and where he actually was found, and that was— But it just wasn't delivered. We don't know that. We don't know if the letter carrier— We have to assume it was not delivered until the 28th of July. We have to assume he didn't pluck it out of his mailbox until that date, but we don't have to assume that there were no attempts to deliver it. It got as far as California by May 5th, and then he— I don't see how we can make all these assumptions in your favor. Mr. Hanna, along those lines, sometimes when the post office— I've gotten these notifications, right? At the post office, come pick it up. Does the post office keep records of when they attempt delivery like that or when they provide notice like that? I don't know, Your Honor. That's not part of the record in the case. All we have is one side of the envelope in this case, and it's the side that contains the— I mean, from the DA's perspective, that would have been useful to know, don't you think? It would have been useful to know if there was any notation on the other side of the envelope saying that there were delivery attempts made. But we don't know on this record. We don't know in this case. Your Honor, it simply gets the incentives wrong. It encourages people to dodge the letter carrier, to bury their heads in the sand after having nearly $600,000 seized from them. Absent exceptional circumstances, sending certified mail without proof of receipt meets due process. It meets Millay, and this Court's cases have said that over and over again, that actual notice is not required. Congress could have required personal service. Congress could have required actual notice, but it did not. It's required a reasonable— But Millay has the Jones v. Flowers gloss on it. Sure, and in this case, we still know that the notice was received. We know that he had the ability to contact DEA to look on forfeiture.gov. He knew who seized the money from him, Your Honor, and he did nothing for 168 days and never raised the timeliness issue until he kept to the district court. Thank you. Okay, Mr. Schoenfeld. Thank you, Mr. Hanna. Thank you. For the DEA— Mr. Schoenfeld, do you know whether your client received any notifications from the U.S. Post Office that there was a certified letter waiting for him there? All I know is that he received, picked up from his bail between July 26th and 28th, the actual letter, and it still had the green slip attached to it. There's no evidence, and I have no knowledge of any attempts of delivery prior to that time. Thank you. And it really is no different than the circumstances in which multiple courts have found a due process violation for undelivered notice. That's what we have here. For the DEA's position to be accepted, it would be in contravention of Garcia v. Meza, where the court expressly said we declined to adopt a per se rule which only examines notice at the time it was sent and turns a blind eye to subsequent events. Mr. Schoenfeld, was your client ever provided notice in the form of a letter, police report, anything, that the DEA was the one that had the money? I do believe that the receipt for the currency— and I'm not positive, but I do believe the receipt for the currency identified that it was the DEA that had seized the currency but did not have the DEA case number on it nor information related to DEA counsel. Okay. And the last thing I would like to note is that the government keeps suggesting because it was a large amount of currency, to quote, nearly $600,000, that my client should have done more. I think that the standard applies equally, if not more forcefully, to the DEA, that given the amount of money at issue and the due process obligations on the part of the DEA, they should have done more than just putting it in the mail and leaving it at that. So I would ask that the judgment be reversed and that the district court be ordered to grant summary judgment based on the undisputed facts in this case in favor of the plaintiff. Thank you. Okay. Thank you, Mr. Schoenfeld. Nice to see you, and the court will stand in recess.